**N.C. BD. OF MORTUARY SCIENCE v. CROWN MEM'L PARK, L.L.C.**

[162 N.C. App. 316 (2004)]

NORTH CAROLINA BOARD OF MORTUARY SCIENCE, Plaintiff v. CROWN MEMOR-IAL PARK, L.L.C., Defendant

No. COA02-1562

(Filed 20 January 2004)

**Constitutional Law— pre-need funeral sales—due process and equal protection**

The trial court erred by finding that portions of the statutory scheme governing pre-need sales of caskets violated due process and equal protection. Seeking to protect pre-need consumer funds for funeral merchandise is a legitimate interest, and the means chosen are rationally related to achieving that interest. N.C.G.S. § 90-210.67(a) (2001).

Appeal by plaintiff from judgment entered 5 June 2002 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 September 2003.

*Allen and Pinnix, P.A., by M. Jackson Nichols and Angela Long Carter, for plaintiff-appellant.*

*Erwin and Eleazer, P.A., by Fenton T. Erwin, Jr. and L. Holmes Eleazer, Jr., for defendant-appellee.*

CALABRIA, Judge.

The North Carolina Board of Mortuary Science (the "Board") appeals the trial court's judgment finding portions of North Carolina's statutory distinction regarding the pre-need[1] sale of caskets to be violative of the due process clause and the equal protection clause of the Constitution of the United States and provisions of Article I, Sections 1 and 19 of the North Carolina Constitution. We reverse.

The Board is an entity created under the provisions of Chapter 90 of the North Carolina General Statutes to regulate the practice of funeral service in North Carolina. N.C. Gen. Stat. § 90-210.18(b) (2001). The practice of funeral service includes, in part, "engaging in

---

1. Sales of funeral merchandise can be roughly categorized into two broad categories: (1) at-need sales or sales upon the death of a decedent and (2) pre-need sales which are connected "with the final disposition of a dead human body, to be furnished or delivered at a time determinable by the death of the person whose body is to be disposed." N.C. Gen. Stat. § 90-210.60(5) (2001). Only casket sales that are pre-need are governed by the Board.

making arrangements for funeral service, selling funeral supplies to the public or making financial arrangements for the rendering of such services or the sale of such supplies." N.C. Gen. Stat. § 90-210.20(k) (2001). While there is no statutory definition for "funeral supplies," the pre-need sale of caskets is a sale of funeral supplies requiring licensure by the Board under N.C. Gen. Stat. § 90-210.67(a) (2001), which states, in part, that "any person who offers to sell or sells a casket, to be furnished or delivered at a time determinable by the death of the person whose body is to be disposed of in the casket, shall first comply with the provisions of this Article."

Crown Memorial Park, L.L.C. ("defendant") is licensed by the North Carolina Cemetery Commission created under the provisions of Article 9 of Chapter 65 of the North Carolina General Statutes. Pursuant to its licensure, defendant is authorized to sell cemetery merchandise; however, what constitutes cemetery merchandise is also undefined in the statutes. Defendant, a cemetery owner and operator, sells gravesites, crypts, urns, markers, and niches. At issue in this case is defendant's pre-need sale of the "Crown Royal casket system." The Crown Royal casket system is comprised of two caskets. The outer or presentation casket is decorative and used during the wake, funeral service and committal service. The inner casket or burial container is a polypropylene casket which holds the body of the deceased. It is not visible when inserted in the presentation casket prior to the wake and is removed after the committal service at the time of burial. Thus, consumers purchase only the inner burial container by choosing the Crown Royal casket system. By retaining and using the presentation casket with multiple inner caskets, defendant is able to reduce costs yet provide a decorative and attractive display until the deceased is buried. Upon full payment of the system, a consumer may take possession of the inner casket at any time but can only use the outer casket at the time of the wake, presentation service, and committal service.

In May 2000, the Board filed suit contending, *inter alia*, defendant had not secured a license from the Board and was, therefore, impermissibly engaged in the sale of pre-need caskets by selling the Crown Royal casket system. Defendant alleged and the trial court concluded that the restriction of pre-need casket sales to licensed funeral establishments and their employees was not rationally related to the State's interest in protecting its citizens, impermissibly discriminated against defendant, and unreasonably deprived defendant of the right to engage in business. The trial court concluded

portions of N.C. Gen. Stat. § 90-210.67(a) were unconstitutional because "[t]here [was] no reasonable distinction between the pre-need sale of caskets by licensed funeral establishments and the pre-need sale of caskets by licensed cemeteries that are willing to be licensed for pre-need sales and to submit to regulation of such sales." The Board appeals.

## I. Substantive Due Process

"Under North Carolina jurisprudence, state 'due process' is governed by Section 19 of the Constitution of North Carolina, which provides that '[n]o person shall be deprived of his life, liberty, or property, but by the law of the land.' " *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 671, 509 S.E.2d 165, 175 (1998) (quoting N.C. Const. art. I, § 19). Our Supreme Court often considers the "law of the land" and "due process of law" to be synonymous.[2] *Id.*; *A-S-P Assocs. v. City of Raleigh*, 298 N.C. 207, 213, 258 S.E.2d 444, 448 (1979). The Board and defendant agree that the challenged statutory provisions are purely economic regulations which "need only satisfy the rational basis level of scrutiny to withstand both the due process and equal protection challenges." *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 358, 542 S.E.2d 668, 674 (2001). *See also State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 681, 446 S.E.2d 332, 346 (1994); *In Re Appeals of Timber Companies*, 98 N.C. App. 412, 420, 391 S.E.2d 503, 508 (1990). "[T]he two-fold constitutional inquiry under both the North Carolina and United States Constitutions is the same: (1) Does the regulation have a legitimate objective; and (2) if so, are the means chosen to implement that objective reasonable?" *Meads*, 349 N.C. at 671, 509 S.E.2d at 175. Under the rational basis test, the law in question is presumed to be constitutional. *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 536, 571 S.E.2d 52, 59 (2002); *Barnhill Sanitation Service v. Gaston County*, 87 N.C. App. 532, 539, 362 S.E.2d 161, 166 (1987).

With regard to the first prong, the Board asserts that the government has a legitimate interest in protecting consumers' funds and investments in pre-need funeral merchandise from unfair and deceptive trade practices within the funeral industry. Widespread abuses in the pricing of funeral services and products in the funeral industry

---

2. While synonymous and treated as such in this case, our Supreme Court has clearly stated that "Section 19 relief against unreasonable and arbitrary state statutes [may be available] in circumstances where relief might not be obtainable under the Fourteenth Amendment to the United States Constitution[.]" *Meads*, 349 N.C. at 671, 509 S.E.2d at 175 (citing *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985)).

prompted the Federal Trade Commission ("FTC") to promulgate regulations in the early 1980's for consumer protection against unfair and deceptive trade practices. *See* FTC Funeral Industry Practices Rule, 16 C.F.R. § 453 (2003). Primarily, these regulations addressed certain practices by funeral providers, including, *inter alia*, "bundling," or charging non-declinable fees, and requiring consumers to purchase items they did not desire to buy. *Id.* Because part of the Board's statutory duties is the enforcement of FTC regulations, *see* N.C. Gen. Stat. § 90-210.25(e)(1)(j) (2001), the Board asserts there is a legitimate governmental interest sufficient to satisfy the first prong of the rational basis test. We disagree.

The purpose of the FTC regulations was to promote the availability of pricing information and prevent abusive practices by the funeral industry including bundling and the charging of improper fees. FTC Funeral Industry Practices Rule, 16 C.F.R. § 453. However, the Board cannot assert the statutory language at issue enforces FTC regulations because those regulations do not address and are not concerned with the funeral industry's handling of funds paid by the consumer in pre-need sales. That interest is sufficiently distinct from the purpose of the FTC regulations to disallow the government's *carte blanche* justification of regulations concerning any aspect of the funeral industry.

The Board asserts, in the alternative, that the risks presented to consumers' funds for pre-need funeral merchandise sales justifies governmental regulation. Our Supreme Court has held that a business may be regulated where there is "some 'distinguishing feature in the business itself or in the manner in which it is ordinarily conducted, the . . . probable consequence of which, if unregulated, is to produce substantial injury to the public peace, health, or welfare.' " *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 65, 366 S.E.2d 697, 699 (1988) (quoting *State v. Harris*, 216 N.C. 746, 758-59, 6 S.E.2d 854, 863 (1940)). Defendant sells pre-need caskets by using a retail installment contract. Pre-need purchasers pay either the entire amount in full or in installments. Where caskets are delivered when needed instead of at the time of payment, the Board regulates the sale as a pre-need sale. The Board asserts N.C. Gen. Stat. § 90-210.67(a) is justified to protect the consumer in such sales. The Board contends this is so because "any other approach puts the consumer at risk; because, they don't have the merchandise."

Generally, in installment sales contracts, the time of performance is the time when the amount due and owing is paid in full. However,

in the installment sales contracts at issue in the case *sub judice*, the actual time of performance awaits the death of the beneficiary[3] of the products and services to be rendered.[4] As a result, performance may be triggered before, at, or years after the time the customer has paid the amount due in full. Because of this inherent flux concerning when the beneficiary may die (and, therefore, when the performance of the parties under the retail sales contracts may occur), we find the pre-need sale of funeral merchandise sufficiently distinct from other businesses to permit governmental regulation. Moreover, we recognize the State's legitimate interest in protecting the investments of its citizens who purchase expensive funeral services and goods potentially years in advance of delivery. Accordingly, the State may take reasonable measures to effectuate the protection of that interest.

The remaining issue to be decided is whether the means implemented by our Legislature are rationally related to achieving its legitimate interest. The regulatory scheme applied to practitioners of funeral services includes the following safeguards: (1) licensure pursuant to N.C. Gen. Stat. § 90-210.67(a); (2) deposit and application requirements for pre-need funeral funds pursuant to N.C. Gen. Stat. § 90-210.61(a) (2001); (3) written, Board-approved pre-need funeral merchandise contracts pursuant to N.C. Gen. Stat. § 90-210.62 (2001); and (4) recordation and auditing requirements pursuant to N.C. Gen. Stat. § 90-210.68 (2001). We find the protections resulting from governmental oversight enabled by the recordation, monitoring, and fund-handling requirements of this statutory scheme sufficiently self-evident to obviate the need for further exposition or analysis. Moreover, we note the protections extended to consumer funds on pre-need funeral merchandise, secured by this commonly used licensing scheme, are sufficiently beneficial when balanced against the resulting burdens imposed on those wishing to engage in activities requiring licensure to withstand scrutiny under the rational basis test. *Poor Richard's, Inc.*, 322 N.C. at 66, 366 S.E.2d at 700. Accordingly, we hold seeking to protect pre-need consumer funds for funeral merchandise is a legitimate interest, and the means chosen are rationally related to achieving that interest.

---

3. Beneficiary is intended to refer to the person for whose death the services and products are to be provided.

4. We are cognizant of defendant's claim that a purchaser of the Crown Royal casket system is entitled to take possession of the inner casket upon full payment; however, the system defendant sells includes not only ownership of the inner casket, but also use of the outer casket, which becomes available only from the time of the beneficiary's wake until the time of the beneficiary's burial.

**N.C. BD. OF MORTUARY SCIENCE v. CROWN MEM'L PARK, L.L.C.**

[162 N.C. App. 316 (2004)]

Defendant's remaining arguments challenge the statutory scheme on the basis that it could be more comprehensive or better tailored to meet the espoused goal. Alternatively, defendant contends these statutory restrictions are premised upon an ulterior motive to protect licensed funeral establishments from legitimate competition in an "anti-consumer" fashion. Both of these arguments fail. Regarding defendant's first remaining argument, we note that, under the rational relation test, it is immaterial whether this Court or an individual could devise a more precise or perfect fit between the espoused goal and the means chosen to effectuate that goal. *Clark's Charlotte, Inc. v. Hunter*, 261 N.C. 222, 229, 134 S.E.2d 364, 369 (1964).[5] The two need only be reasonably related, and our holding makes clear that they are. Regarding defendant's second remaining argument, even if we interpret the surrounding circumstances as capable of supporting defendant's assertion that there was an ulterior motivation so as to make the statute otherwise unconstitutional, we would be constrained from doing so. *See Jacobs v. City of Asheville*, 137 N.C. App. 441, 443, 528 S.E.2d 905, 907 (2000) (observing statutes enacted by the legislature are presumed constitutional and will be upheld as such unless the party challenging the legislation shows unmistakably, clearly, and positively that it is unconstitutional); *Smith v. Keator*, 285 N.C. 530, 534, 206 S.E.2d 203, 206 (1974) (stating "[w]here a statute . . . is susceptible to two interpretations—one constitutional and one unconstitutional—the Court should adopt the interpretation resulting in a finding of constitutionality").

II. Equal Protection

When a governmental classification does not burden the exercise of a fundamental right, or operate to the peculiar disadvantage of a suspect class, [the equal protection clauses of the United States and North Carolina Constitutions impose upon lawmaking bodies the requirement] that the governmental classification bear some rational relationship to a conceivable legitimate interest of government.

*Barnhill Sanitation Service v. Gaston County*, 87 N.C. App. 532, 539, 362 S.E.2d 161, 166 (1987) (citing *State v. Greenwood*, 280 N.C. 651, 656, 187 S.E.2d 8, 11-12 (1972); *White v. Pate*, 308 N.C. 759, 766-67, 304 S.E.2d 199, 204 (1983)). As our previous discussion makes clear, there

5. We note the opinion in *Hunter* is more expressly tailored to an equal protection analysis; however, our Supreme Court made clear (by using the analysis in the opinion to determine both the equal protection and due process challenges) that the opinion was equally applicable to both.

is a rational relationship between consumer protection and limiting the pre-need sale of funeral merchandise to licensed funeral home directors for purposes of monitoring how funds for such products and services are handled. Accordingly, we hold the statutory language does not violate defendant's equal protection rights. The judgment of the trial court is reversed.

Reversed.

Judges McGEE and HUNTER concur.