IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-158

 No. COA20-877

 Filed 15 March 2022

 Pitt County, No. 19 CVS 1217

 ERIC STEVEN FEARRINGTON, CRAIG D. MALMROSE, Plaintiffs,

 v.

 CITY OF GREENVILLE, PITT COUNTY BOARD OF EDUCATION, Defendants.

 Appeal by Plaintiffs from orders entered 22 April 2020, 22 July 2020, and 28

 July 2020 by Judge Jeffery B. Foster in Pitt County Superior Court. Heard in the

 Court of Appeals 8 September 2021.

 Stam Law Firm, PLLC, by R. Daniel Gibson and Paul Stam, for Plaintiffs-
 Appellants.

 Hartzog Law Group LLP, by Dan Hartzog Jr., for Defendant-Appellee City of
 Greenville.

 Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Robert J. King III,
 Jill R. Wilson, and Elizabeth L. Troutman, for Defendant-Appellee Pitt County
 Board of Education.

 GRIFFIN, Judge.

¶1 Plaintiffs Eric Steven Fearrington and Craig D. Malmrose appeal from orders

 denying Plaintiffs’ motion for summary judgment and granting City of Greenville’s

 and Pitt County Board of Education’s motions to dismiss. Plaintiffs argue that

 various aspects of Greenville’s Red Light Camera Enforcement Program (“RLCEP”)
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 are illegal and unconstitutional. After review, we hold that the funding framework

 of the RLCEP violates the Fines and Forfeitures Clause contained in Article IX,

 Section 7 of our State Constitution. We therefore reverse the trial court’s dismissal

 of Plaintiffs’ claim under Article IX, Section 7 and remand for entry of summary

 judgment in Plaintiffs’ favor. We otherwise affirm the trial court’s orders.

¶2 Plaintiffs also argue that the trial court erroneously considered the affidavit of

 an unqualified expert. We hold that Plaintiffs failed to preserve this argument for

 appellate review.

 I. Factual and Procedural Background

¶3 Pursuant to sections 20-158 and 20-176 of our General Statutes, failure to stop

 at a traffic light when the light is red is an infraction subject to a “penalty of not more

 than one hundred dollars[.]” N.C. Gen. Stat. §§ 20-158(b)(2)(a), 20-176(a), (b) (2019).

 Notwithstanding these provisions, the General Assembly has further provided that

 certain “[m]unicipalities may adopt ordinances for the civil enforcement of [N.C. Gen.

 Stat. §] 20-158 by means of a traffic control photographic system[.]” N.C. Gen. Stat.

 § 160A-300.1(c) (2019). These “traffic control photographic system[s]” are more

 commonly known as “red light cameras.” Id.

¶4 On 30 June 2016, the General Assembly enacted a local act authorizing

 Greenville to implement an RLCEP, providing in pertinent part:

 SECTION 3. . . . (2) A violation detected by a [red light
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 camera] shall be deemed a noncriminal violation for which
 a civil penalty of one hundred dollars ($100.00) shall be
 assessed, and for which no points authorized by
 G.S. 20-16(c) shall be assigned to the owner or driver of the
 vehicle nor insurance points as authorized by
 G.S. 58-36-65.

 SECTION 4. The City of Greenville and the Pitt County
 Board of Education may enter into an interlocal agreement
 necessary and proper to effectuate the purpose and intent
 of G.S. 160A-300.1 and this act. Any agreement entered
 into pursuant to this section may include provisions on
 cost-sharing and reimbursement that the Pitt County
 Board of Education and the City of Greenville freely and
 voluntarily agree to for the purpose of effectuating the
 provisions of G.S. 160A-300.1 and this act.

 An Act to Make Changes to the Law Governing Red Light Cameras in the City of

 Greenville, 2016 N.C. Sess. Laws 64, §§ 3, 4 [hereinafter “S.L. 2016-64”].

¶5 After S.L. 2016-64 was enacted, Greenville implemented an RLCEP and

 amended its Code of Ordinances accordingly:

 Sec. 10-2-283. Offense.

 (a) It shall be unlawful for a vehicle to cross the stop line
 at a [red light camera] location when the traffic signal for
 that vehicle’s direction of travel is emitting a steady red
 light[.]

 ...

 Sec. 10-2-285. Appeals. . . .

 Appeals shall be heard through an administrative process
 established by the city. Once an appeal is requested, an
 appeal hearing will be scheduled. The hearing officer’s
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 decision is subject to review in the Superior Court of Pitt
 County by proceedings in the nature of certiorari.

 Greenville, N.C., Code of Ordinances §§ 10-2-283(a), 285 (2016).

¶6 In March 2017, Greenville entered into a contract with American Traffic

 Solutions (“ATS”), a firm headquartered in Arizona, for the installation, maintenance,

 and management of the City’s RLCEP. Pursuant to the contract, Greenville agreed

 to pay ATS $31.85 in fees for every $100.00 paid citation, in addition to other

 miscellaneous fees associated with ATS services. The record reflects that detailed

 design plans for the RLCEP were produced with ATS’s logo and address appearing

 on each page. Robert F. Rennebaum, a licensed North Carolina engineer, signed and

 affixed his seal to the design plans.

¶7 In November 2018, the North Carolina Board of Examiners for Engineers and

 Surveyors sent a letter to ATS, stating that “there [wa]s sufficient evidence to support

 the charges that [ATS] [wa]s practicing or offering to practice engineering and

 surveying in North Carolina . . . without being licensed” by the Board. The Board

 also sent a letter to Mr. Rennebaum, which stated, “[F]or red light camera installation

 plans for . . . Greenville . . . bearing your certification, you may be in violation for

 affixing your seal to work not done under your direct supervisory control . . . and

 aiding and abetting [ATS] to evade or attempt to evade the provisions of [N.C. Gen.

 Stat. § 89C-16]. Allegedly, the work you certified was prepared by [ATS].” In May
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 2019, the Board entered a Decision and Order finding that Mr. Rennebaum did

 commit the foregoing violations and ordered that he pay a $5,000.00 civil penalty and

 pass an “Engineering Ethics” course.

¶8 Greenville and Pitt County Board of Education (the “School Board”) entered

 into an interlocal funding agreement whereby the civil penalties from the RLCEP

 would be collected by Greenville and forwarded to the School Board. It was agreed

 that Greenville would then invoice the School Board monthly for all expenses

 associated with maintaining the RLCEP, and the invoices were to be paid within

 thirty days of receipt. According to Greenville’s responses to interrogatories, the

 RLCEP generated $2,495,380.46 in total revenue from 2017 through June 2019. The

 School Board paid Greenville $706,986.65 in program expenses during the same

 period, which included $581,986.65 in fees invoiced by ATS. The School Board

 received $1,788,393.81 in net revenue during the period, which is 71.66% of the total

 amount of fines and fees collected by Greenville.

¶9 On 15 May 2018, Plaintiff Fearrington was issued a citation for failing to stop

 at a red light camera location when the light was red. Fearrington submitted a

 written request for an appeal and stated in his request that (1) the RLCEP violated

 “Article I, Sections 1, 19, 35 and 36 of the North Carolina Constitution”; and (2) the

 interlocal agreement between Greenville and the School Board violated “Article IX,

 Section 7 of the North Carolina [Constitution]” because less than “ninety percent of
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 the clear proceeds of” the civil penalties collected by Greenville went to the School

 Board. An appeal hearing was held on 16 October 2018, after which a Notice of

 Determination was issued finding Fearrington “liable” because he presented “no

 defense[.]”

¶ 10 Following the appeal hearing, Fearrington was informed in writing that he had

 “fully exhausted [his] administrative remedies with the City of Greenville concerning

 [his] citation” and that, if he wished to pursue the matter further, he should file a

 petition for writ of certiorari with Pitt County Superior Court. Fearrington then filed

 a petition for writ of certiorari. In response, Defendants stated to him in writing that

 “[t]he proper mechanism through which to present your two constitutional challenges

 to the [RLCEP] is through a declaratory judgment action[.]” Pursuant to an

 agreement between the parties, the trial court entered a “Consent Order for the

 purpose of effectuating their agreements” and concluded the following as a matter of

 law:

 1. [Fearrington] has fully exhausted his administrative
 remedies with the City of Greenville concerning his
 citation.
 2. A declaratory judgment action, rather than a Petition
 for Review under N.C. Gen. Stat. § 160A-393, is the
 most efficient means for [Fearrington] to present his as-
 applied challenges to the [RLCEP].

¶ 11 Plaintiff Malmrose also appealed his citation. Malmrose stated in a sworn

 deposition that he attempted to record his appeal hearing on his phone, but a
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 Greenville police officer stopped him from doing so. The officer confiscated

 Malmrose’s phone and informed him that Greenville’s city attorney instructed him to

 not allow respondents to record the hearings. Following the hearing, a Notice of

 Determination was issued finding Malmrose “liable” because of a “fast yellow[.]”

¶ 12 On 22 April 2019, Plaintiffs jointly filed a Complaint in Pitt County Superior

 Court, seeking declaratory judgments that the RLCEP violated (1) Article I, Sections

 1, 19, 35 and 36 of the North Carolina Constitution, as applied; (2) N.C. Gen. Stat. §

 160A-300.1; (3) Article IX, Section 7 of the North Carolina Constitution, as applied,

 due to the funding scheme adopted by the interlocal agreement between Greenville

 and the School Board; (4) Chapter 89C of the North Carolina General Statutes

 governing the lawful practice of engineering in North Carolina; and (5) procedural

 due process.

¶ 13 On 22 April 2020, the trial court granted Defendants’ motions to dismiss, and

 denied Plaintiffs’ motion for summary judgment, as to claims (2), (3), and (4). On 22

 July 2020, the court granted the School Board’s motion to dismiss as to claims (1) and

 (5), resolving all remaining claims against the School Board. With only claims (1)

 and (5) pending against Greenville remaining, the trial court granted summary

 judgment in Greenville’s favor as to those claims. Plaintiffs’ timely filed notice of

 appeal from the trial court’s orders.

 II. Jurisdiction
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

¶ 14 Defendants argue that (1) Plaintiffs’ claims must be dismissed for failure to

 exhaust administrative remedies and (2) an adequate state remedy exists to redress

 Plaintiffs’ injury, barring Plaintiffs’ constitutional claims. Defendants also argue

 that Plaintiffs lack standing to bring their claim under Article IX, Section 7. We

 address each argument in turn.

 A. Administrative Remedies

¶ 15 Defendants argue that Plaintiffs’ claims should be dismissed because Plaintiffs

 failed to exhaust administrative remedies. Because Plaintiffs did not have their

 administrative appeals heard via petitions for certiorari in Pitt County Superior

 Court, Defendants reason that Plaintiffs were barred from filing the instant action.

 We disagree.

¶ 16 “As a general rule, where the legislature has provided by statute an effective

 administrative remedy, that remedy is exclusive and its relief must be exhausted

 before recourse may be had to the courts.” Presnell v. Pell, 298 N.C. 715, 721, 260

 S.E.2d 611, 615 (1979). “If a plaintiff has failed to exhaust its administrative

 remedies, the court lacks subject matter jurisdiction and the action must be

 dismissed.” Phillips v. Orange Cty. Health Dep’t, 237 N.C. App. 249, 257, 765 S.E.2d

 811, 817 (2014) (citation omitted).

¶ 17 With respect to red light camera citations, N.C. Gen. Stat. § 160A-300.1(c)(4)

 provides that “[t]he municipality shall institute a nonjudicial administrative hearing
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 to review objections to citations or penalties issued or assessed under this section.”

 The local ordinance governing Greenville’s RLCEP provides,

 Appeals shall be heard through an administrative process
 established by the city. Once an appeal is requested, an
 appeal hearing will be scheduled. The hearing officer’s
 decision is subject to review in the Superior Court of Pitt
 County by proceedings in the nature of certiorari.

 Greenville, N.C., Code of Ordinances §§ 10-2-285. Review of the hearing officer’s

 decision in superior court is the final step in the appeal process established by

 Greenville.

¶ 18 In this case, Fearrington filed a petition for writ of certiorari in Pitt County

 Superior Court seeking review of the constitutional claims he presented during the

 administrative hearing. Defendants then stated to him in writing that “[t]he proper

 mechanism through which to present your two constitutional challenges to the

 [RLCEP] is through a declaratory judgment action[.]” Pursuant to an agreement by

 the parties, the trial court entered a Consent Order disposing of Fearrington’s

 petition for writ of certiorari and concluded as a matter of law that Fearrington had

 “fully exhausted his administrative remedies with the City of Greenville concerning

 his citation.”

¶ 19 We conclude that Fearrington exhausted his administrative remedies once the

 trial court entered the Consent Order disposing of his petition for writ of certiorari.

 The Consent Order constitutes a final order entered in the last stage of the
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 administrative appeal process. Once the order was entered, Fearrington had no other

 administrative remedy available to him and was free to file the instant action in the

 trial court.

¶ 20 Defendants argue that, regardless of the trial court’s conclusion that

 administrative remedies were exhausted, Plaintiffs’ appeal should be dismissed

 because (1) the trial court’s conclusion was incorrect and (2) the Consent Order was

 entered to give effect to the parties’ agreements, which is insufficient to establish

 subject matter jurisdiction.

¶ 21 It is true that “parties to an action may not stipulate to give a court subject

 matter jurisdiction[] where no such jurisdiction exists. Thus, the parties could not

 simply stipulate that they had exhausted all administrative remedies in order for the

 trial court to have jurisdiction over the matter.” Bio-Medical Apps. of N.C., Inc. v.

 N.C. Dep’t of Health & Hum. Servs., 179 N.C. App. 483, 492, 634 S.E.2d 572, 579

 (2006). In this case, however, a final order was entered which disposed of the final

 appeal in the administrative process. The Consent Order thus amounted to more

 than a mere stipulation by the parties. Once the parties’ agreement was reduced to

 a written order, “[i]t acquire[d] the status of a judgment, with all its incidents,

 through the approval of the judge and its recordation in the records of the court.”

 McRary v. McRary, 228 N.C. 714, 719, 47 S.E.2d 27, 31 (1948) (emphasis added). “The

 fact that a judgment is rendered by consent gives it neither less nor greater force and
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 effect than it would have had it been rendered after protracted litigation, except to

 the extent that the consent excuses error and operates to end all controversy between

 the parties.” Id. at 720, 47 S.E.2d at 31.

¶ 22 Moreover, our inquiry with respect to the exhaustion requirement is not

 whether the legal conclusions contained in the final order are correct or incorrect.

 Once a tribunal with proper jurisdiction enters a final order disposing of the last stage

 in the administrative process, as here, all administrative remedies are exhausted.

 See Hentz v. Asheville City Bd. of Educ., 189 N.C. App. 520, 523, 658 S.E.2d 520, 522

 (2008) (“Because the [Board of Education] had not yet issued a final decision at the

 time [the] plaintiff filed her action in superior court, [the] plaintiff had not exhausted

 all administrative remedies.”). Whether the trial court correctly concluded that

 Fearrington had exhausted his administrative remedies is therefore irrelevant.

 B. Adequate State Remedy

¶ 23 Defendants also argue that Plaintiffs’ constitutional claims are barred because

 an adequate state remedy exists to redress Plaintiffs’ injury. See Corum v. Univ. of

 N.C. Bd. of Governors, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992) (“Having no

 other remedy, our common law guarantees [the] plaintiff a direct action under the

 State Constitution for alleged violations of his constitutional . . . rights.” (citation

 omitted)). We have already concluded that Fearrington exhausted all remedies

 available to him. There is also no adequate statutory or common law remedy which
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 would redress Plaintiffs’ asserted injuries under the State Constitution. See Alt v.

 Parker, 112 N.C. App. 307, 318, 435 S.E.2d 773, 779 (1993) (dismissing the plaintiff’s

 appeal due to the existence of adequate state remedies because the plaintiff failed to

 exhaust administrative remedies and had a “common law tort action for false

 imprisonment available to him”). We therefore conclude that an adequate state

 remedy does not exist to bar Plaintiffs’ constitutional claims.

 C. Article IX, Section 7 Standing

¶ 24 Finally, Defendants argue that Plaintiffs lack standing to challenge the

 funding scheme adopted by the interlocal agreement between Greenville and the

 School Board. Because “Plaintiffs do not have a sufficient stake in any alleged

 controversy arising under the Interlocal Agreement” and “have not suffered some

 ‘injury in fact’ from any breach thereof,” Defendants contend that Plaintiffs’ claim

 under Article IX, Section 7 must be dismissed. We disagree.

¶ 25 First, our Supreme Court has made plain that the “injury-in-fact requirement

 has no place in the text or history of our [S]tate Constitution” and is “inconsistent

 with the caselaw of this Court.” Comm. to Elect Dan Forest v. Emps. Political Action

 Comm., 376 N.C. 558, 2021-NCSC-6, ¶¶73–74. “Rather, as a rule of prudential self-

 restraint . . . we have required a plaintiff to allege ‘direct injury’ to invoke the judicial

 power to pass on the constitutionality of a legislative or executive act.” Id. ¶ 73. On

 the other hand, “[w]hen a person alleges the infringement of a legal right arising
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 under a cause of action at common law, a statute, or the North Carolina Constitution,

 . . . the legal injury itself gives rise to standing.” Id. ¶ 82. This is because the “remedy

 clause [of our State Constitution] should be understood as guaranteeing standing to

 sue in our courts where a legal right at common law, by statute, or arising under the

 North Carolina Constitution has been infringed.” Id. ¶ 81 (emphasis in original)

 (citing N.C. Const. Art. I, § 18, cl. 2). Because Plaintiffs are not challenging the

 constitutionality of a statute or an “executive act,” they need not demonstrate an

 injury-in-fact in order to establish standing. Id. ¶¶ 73, 81.

¶ 26 Even so, we cannot say that Plaintiffs have failed to demonstrate any injury

 resulting from the funding agreement between Greenville and the School Board.

 Plaintiffs were both issued citations at red light camera locations and each were

 found liable for a $100.00 fine. If Plaintiffs are correct in arguing that the proceeds

 of the fines are unconstitutionally appropriated pursuant to Article IX, Section 7, they

 have demonstrated an injury to their rights under the State Constitution. Our

 appellate courts have previously addressed the merits of at least one case strikingly

 similar to the case at bar. See Cauble v. City of Asheville, 301 N.C. 340, 271 S.E.2d

 258 (1980).

¶ 27 In Cauble, the plaintiff “alleged that he and the citizens, residents and

 taxpayers of the City of Asheville had paid fines for overtime parking which . . . ,

 pursuant to Article IX, [S]ection 7 of the North Carolina Constitution, belonged to the
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 county to be ‘used exclusively for maintaining free public schools.’” Id. at 341, 271

 S.E.2d at 259. At no point did this Court or our Supreme Court doubt whether it had

 subject-matter jurisdiction to hear the plaintiff’s appeal. Id. at 342, 271 S.E.2d at

 259. Similar to Cauble, Plaintiffs allege that they each paid fines for red light camera

 violations which, under Article IX, Section 7, belong to the School Board. We discern

 no notable difference between Cauble and the instant case with respect to

 jurisdiction.

¶ 28 Moreover, there is “no serious question that a taxpayer ha[s] an equitable right

 to sue to prevent an illegal disposition of the moneys of [a] county.” Goldston v. State,

 361 N.C. 26, 31, 637 S.E.2d 876, 880 (2006) (citations and internal quotation marks

 omitted). “[I]f such rights were denied to exist against municipal corporations, then

 taxpayers and property owners who bear the burdens of government would not only

 be without remedy, but liable to be plundered whenever irresponsible men might get

 into the control of the government of towns and cities.” Id. (citation omitted).

 Plaintiffs alleged in their Complaint that they are residents and taxpayers of Pitt

 County.

¶ 29 We conclude that Plaintiffs’ appeal is properly before this Court and proceed

 to address the merits of their arguments.

 III. Analysis
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

¶ 30 Plaintiffs argue that the trial court erred in denying their motion for summary

 judgment because Greenville’s RLCEP violates (1) Chapter 89C of the North Carolina

 General Statutes; (2) procedural due process; (3) substantive due process; and (4) the

 Fines and Forfeitures Clause contained in Article IX, Section 7 of the North Carolina

 Constitution. We hold that Plaintiffs are entitled to summary judgment as to their

 claim under the Fines and Forfeitures Clause. We otherwise affirm the trial court’s

 orders.

¶ 31 Plaintiffs also argue that the trial court erred in considering the affidavit of an

 unqualified expert. Although Plaintiffs motioned to strike the affidavit from the

 court’s consideration, our review of the record indicates that Plaintiffs never obtained

 a ruling on that motion. See N.C. R. App. P. 10(a)(1) (“In order to preserve an issue

 for appellate review, a party must have presented to the trial court a timely request,

 objection or motion . . . [and] obtain a ruling upon the party’s request, objection, or

 motion.”); Finley Forest Condo. Ass’n v. Perry, 163 N.C. App. 735, 738, 594 S.E.2d 227,

 230 (2004) (“This Court is unable to review the issue concerning the trial court’s

 admission and consideration of the affidavits since there is nothing before this Court

 indicating the trial court’s ruling on the question.”). We are thus unable to review

 this issue.

 A. Chapter 89C
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

¶ 32 Plaintiffs contend that Chapter 89C of the General Statutes “imposes a duty

 on municipalities to enforce its provisions” and that “Defendants violated this duty

 by using red light camera plans drawn by unlicensed engineers” with ATS. Because

 Chapter 89C does not contemplate or provide a private cause of action for violations

 of its provisions, we hold that Plaintiffs’ claim was appropriately dismissed by the

 trial court.

¶ 33 “[A] statute may authorize a private right of action either explicitly or

 impliedly, though typically, ‘a statute allows for a private cause of action only where

 the legislature has expressly provided a private cause of action within the statute[.]’”

 Sykes v. Health Network Sols., Inc., 372 N.C. 326, 338, 828 S.E.2d 467, 474 (2019)

 (citations omitted). “Where a cause of action is created by statute and the statute

 also provides who is to bring the action, the person or persons so designated, and,

 ordinarily, only such persons, may sue.” State ex rel. Lanier v. Vines, 274 N.C. 486,

 492, 164 S.E.2d 161, 164 (1968) (citation omitted).

¶ 34 N.C. Gen. Stat. § 89C-23 provides in pertinent part:

 Any person who shall practice, or offer to practice,
 engineering or land surveying in this State without first
 being licensed in accordance with the provisions of this
 Chapter . . . , in addition to injunctive procedures set out
 hereinbefore, shall be guilty of a Class 2 misdemeanor. . . .
 It shall be the duty . . . of the State and all political
 subdivisions of the State to enforce the provisions of this
 Chapter and to prosecute any persons violating them.
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 N.C. Gen. Stat. § 89C-23 (2019). Section 89C-23 thus provides two enforcement

 mechanisms for violations of its provisions: (1) “injunctive procedures” and (2)

 criminal prosecution. Id. With respect to the former, N.C. Gen. Stat. § 89C-10(c)

 provides, “The Board [of Examiners for Engineers and Surveyors] may in the name

 of the State apply for relief, by injunction, . . . to enforce the provisions of this

 Chapter, or to restrain any violation of the provisions of this Chapter.” N.C. Gen.

 Stat. § 89C-10(c) (2019).

¶ 35 Here, Chapter 89C does not provide Plaintiffs with a private cause of action.

 It instead vests authority in the Board to seek an injunction in the name of the State

 for violation of the Chapter’s provisions. Id. Although section 89C-23 requires “all

 political subdivisions of the State to enforce the provisions of th[e] Chapter and to

 prosecute any persons violating them[,]” it does not provide Plaintiffs with a private

 right of action against Defendants. Id. § 89C-23.

¶ 36 The fact that Plaintiffs seek a declaratory judgment as opposed to an injunction

 does not change our analysis. For example, in Sykes, the plaintiffs sought a

 declaratory judgment that the defendants “fail[ed] to comply with various provisions

 of the [S]tate’s Insurance Law found in Chapter 58 of the North Carolina General

 Statutes.” Sykes, 372 N.C. at 337, 828 S.E.2d at 474. The plaintiffs argued that the

 “Declaratory Judgment Act g[a]ve[] them a path to declaratory relief,

 notwithstanding Chapter 58’s language vesting enforcement authority in the
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 Commissioner of Insurance.” Id. at 339, 828 S.E.2d at 475. The Court rejected this

 argument, holding that “the language of [Chapter 58], as well as the previous cases

 interpreting other portions of Chapter 58, vest enforcement of the requirements of

 the statutory sections identified by plaintiffs in the Commissioner of Insurance,

 meaning that plaintiffs do not have a private right of action for declaratory relief

 under these provisions.” Id.

¶ 37 As in Sykes, Plaintiffs seek a declaration that Defendants violated certain

 statutory provisions, but those provisions do not provide Plaintiffs with a private

 right of action. Instead, the authority to enforce Chapter 89C lies with the Board of

 Examiners for Engineers and Surveyors and “political subdivisions of the State.”

 N.C. Gen. Stat. §§ 89C-10, 23. Plaintiffs point to no portions of Chapter 89C that,

 either expressly or impliedly, confer a right of action on private claimants. We affirm

 the trial court’s dismissal of Plaintiffs’ claim under Chapter 89C.

 B. Procedural Due Process

¶ 38 Plaintiffs next argue that the RLCEP’s administrative appeal hearings violate

 procedural due process because the hearing officers “disregard[] evidence and deny[]

 the right to record hearings.” We disagree.

¶ 39 “The fundamental premise of procedural due process protection is notice and

 the opportunity to be heard . . . ‘at a meaningful time and in a meaningful manner.’”

 Peace v. Emp. Sec. Comm’n of N.C., 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998)
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). “At a minimum, due process

 requires adequate notice of the charges and a fair opportunity to meet them, and the

 particulars of notice and hearing must be tailored to the capacities and circumstances

 of those who are to be heard.” State v. Stines, 200 N.C. App. 193, 198, 683 S.E.2d 411,

 414 (2009) (citation omitted). Under the 14th Amendment of the federal constitution,

 the degree of process due in a particular proceeding turns on three factors: (1) “the

 private interests at stake,” (2) “the government’s interest,” and (3) “the risk that the

 procedures used will lead to erroneous decisions.” Lassiter v. Dep’t of Soc. Servs. of

 Durham Cty., N.C., 452 U.S. 18, 27 (1981) (citing Matthews v. Eldridge, 424 U.S. 319,

 335 (1976)).

¶ 40 Greenville is required by statute to “institute a nonjudicial administrative

 hearing to review objections to [red light camera] citations[.]” N.C. Gen. Stat. § 160A-

 300.1(c)(4). To that end, the local ordinance governing Greenville’s RLCEP provides

 that appeals from citations “shall be heard through an administrative process

 established by the city.” Greenville, N.C., Code of Ordinances §§ 10-2-285. If the

 appellant receives an unfavorable decision following his administrative appeal, the

 RLCEP provides that the “hearing officer’s decision is subject to review in the

 Superior Court of Pitt County by proceedings in the nature of certiorari.” Id.

¶ 41 Once a petition for certiorari is filed and granted, the superior court reviews

 the administrative decision pursuant to the following standard of review:
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 (1) . . . [T]he court shall ensure that the rights of petitioners
 have not been prejudiced because the decision-making
 body's findings, inferences, conclusions, or decisions were:

 a. In violation of constitutional provisions, including those
 protecting procedural due process rights.

 b. In excess of the statutory authority conferred upon the
 local government, including preemption, or the authority
 conferred upon the decision-making board by ordinance.

 c. Inconsistent with applicable procedures specified by
 statute or ordinance.

 d. Affected by other error of law.

 e. Unsupported by competent, material, and substantial
 evidence in view of the entire record.

 f. Arbitrary or capricious.

 (2) When the issue before the court is one set forth in sub-
 subdivisions a. through d. of subdivision (1) of this
 subsection, including whether the decision-making board
 erred in interpreting an ordinance, the court shall review
 that issue de novo. . . . Whether the record contains
 competent, material, and substantial evidence is a
 conclusion of law, reviewable de novo.

N.C. Gen. Stat. § 160D-1402(j)(1-2) (2020).1

1 Prior to 19 June 2020, appeals from municipal administrative decisions subject to superior

court review were governed by N.C. Gen. Stat. § 160A-393 (2019). The General Assembly
subsequently amended the provisions therein and recodified them under a new Chapter:
160D. The standard of review governing the instant appeal remains unchanged. Moreover,
N.C. Gen. Stat. § 160D-111, titled “Effect on prior laws,” provides, “The enactment of [160D]
does not require the readoption of any local government ordinance enacted pursuant to laws
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

¶ 42 We conclude that the hearing process established by Greenville is

 constitutionally adequate. First, there is little “risk that the procedures used will

 lead to erroneous decisions.” Lassiter, 452 U.S. at 27 (1981). Given that running a

 red light is a strict liability offense, N.C. Gen. Stat. §§ 20-158(2)(a), 20-176(a), (b)

 (2019), it follows that determining whether a cited individual is liable for a violation

 involves a rather limited inquiry. For example, Greenville’s ordinances provide only

 two affirmative defenses to a red light camera violation:

 (c) . . . [T]he owner of the vehicle shall not be responsible
 for the violation if . . . he furnishes the officials or agents of
 the city either of the following:

 (1) An affidavit by him stating the name and address
 of the person or entity who had the care, custody,
 and control of the vehicle at the time of the
 violation; or

 (2) An affidavit by him stating that, at the time of
 the violation, the vehicle involved was stolen.
 The affidavit must be supported with evidence
 that supports the affidavit, including insurance
 or police report information.

 (d) . . . [T]he owner of the vehicle shall not be responsible
 for the violation if notice of the violation is given to the

 that were in effect before June 19, 2020 and are restated or revised herein. The provisions
 of this Chapter do not affect any act heretofore done, any liability incurred, any right accrued
 or vested, or any suit or prosecution begun or cause of action accrued as of June 19, 2020.”
 N.C. Gen. Stat. § 160D-111(a) (2020). Plaintiffs received their citations and commenced the
 instant suit prior to these amendments.
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 owner of the vehicle more than ninety (90) days after the
 date of the violation.

 Greenville, N.C., Code of Ordinances § 10-2-283(c-d).

¶ 43 Neither Plaintiff presented evidence establishing an affirmative defense.

 Although Malmrose was prevented from recording his hearing, the affirmative

 defenses under the ordinance require submission of affidavits or proof that notice of

 the violation was received more than ninety days after the violation. In light of this

 limited inquiry, it is unlikely that recordings or transcripts of the proceedings would

 mitigate the risk of erroneous decisions.

¶ 44 We also reject Plaintiffs’ argument that the hearing officers “disregard[ed]

 evidence” during Fearrington’s hearing. During his hearing, Fearrington argued and

 submitted evidence that the RLCEP, as applied, violated substantive due process as

 well as Article IX, Section 7 of the State Constitution. A Notice of Determination was

 subsequently issued finding Fearrington “liable” because he had “no defense[.]”

 Fearrington indeed did not present evidence establishing an affirmative defense.

 Moreover, municipal hearing officers do not have jurisdiction to decide constitutional

 issues. See Meads v. N.C. Dep’t of Agric., 349 N.C. 656, 670, 509 S.E.2d 165, 174

 (1998) (stating that “it is the province of the judiciary to make constitutional

 determinations”).
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

¶ 45 Although “constitutional claims will not be acted upon by administrative

 tribunals, such claims can be reserved for the” judiciary by statute, as here. Johnston

 v. Gaston Cty., 71 N.C. App. 707, 713, 323 S.E.2d 381, 384 (1984). “This division of

 review, saving constitutional issues for the courts, does not unduly hinder or restrict

 [an appellant] in asserting his rights.” Id. On appeal to superior court, the trial judge

 has jurisdiction to determine whether the hearing officers’ decisions are “[i]n violation

 of constitutional provisions, including those protecting procedural due process

 rights.” N.C. Gen. Stat. § 160D-1402(j)(1)(a). The superior court decides

 constitutional questions de novo and, if necessary, has the authority to “allow the

 record to be supplemented with affidavits, testimony of witnesses, or documentary or

 other evidence[.]” Id. § 160D-1402(j)(1), (i). We conclude that these procedures

 adequately protected Plaintiffs’ procedural due process rights.

 C. Substantive Due Process

¶ 46 Plaintiffs also argue that Greenville’s RLCEP, as applied, violates substantive

 due process under the State Constitution because it “infringes Plaintiffs’ fundamental

 right to travel and has no rational relation to a legitimate governmental purpose.”

 This argument is without merit.

¶ 47 In general, substantive due process bars government action that unreasonably

 or arbitrarily deprives individuals of a liberty or property interest. Rhyne v. K-Mart

 Corp., 358 N.C. 160, 181, 594 S.E.2d 1, 15 (2004). “When reviewing an alleged
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 violation of substantive due process rights, a court’s first duty is to carefully describe

 the liberty interest the complainant seeks to have protected.” Standley v. Woodfin,

 362 N.C. 328, 331, 661 S.E.2d 728, 730 (2008). If the liberty interest is “fundamental,”

 our standard of review is strict scrutiny. Rhyne, 358 N.C. at 180, 594 S.E.2d at 15.

 Otherwise, we apply the rational basis test, which only requires that the government

 action “in question [be] rationally related to a legitimate government purpose.”

 Standley, 362 N.C. at 332, 661 S.E.2d at 731.

¶ 48 Plaintiffs argue that the RLCEP infringes on “the fundamental right to

 travel[.]” “[T]he right to travel on public streets is a fundamental segment of liberty”

 such that “the absolute prohibition of such travel requires substantially more

 justification than the regulation of it by traffic lights or rules of the road.” State v.

 Dobbins, 277 N.C. 484, 499, 178 S.E.2d 449, 457-58 (1971) (emphasis added). “The

 familiar traffic light is . . . an ever present reminder that this segment of liberty is

 not absolute. It may be regulated, as to the time and manner of its exercise, when

 reasonably deemed necessary to the public safety, by laws reasonably adapted to the

 attainment of that objective.” Id. at 456, 178 S.E.2d at 497 (emphasis added).

¶ 49 Our precedent clearly demonstrates that laws relating to “traffic lights and

 rules of the road” are different in kind than other laws regulating travel. Id. at 499,

 178 S.E.2d at 457-58. So long as such laws are “reasonably adapted to the attainment

 of” the government’s interest in “public safety,” they will not be disturbed upon review
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 by the courts. Id. at 456, 178 S.E.2d at 497. We therefore review Plaintiffs’

 substantive due process claim under the rational basis test.

¶ 50 “When determining whether a rational basis exists for application of a law, we

 must determine whether the law in question is rationally related to a legitimate

 government purpose.” Standley, 362 N.C. at 332, 661 S.E.2d at 731 (citations

 omitted). In making this determination, “it is immaterial whether this Court or an

 individual could devise a more precise or perfect fit between the espoused goal and

 the means chosen to effectuate that goal. The two need only be reasonably related[.]”

 N.C. Bd. of Mortuary Sci. v. Crown Mem’l Park, LLC, 162 N.C. App. 316, 321, 590

 S.E.2d 467, 471 (2004) (citing Clark’s Charlotte, Inc. v. Hunter, 261 N.C. 222, 229,

 134 S.E.2d 364, 369 (1964)); see also FCC v. Beach Commc’ns, Inc., 508 U.S. 307, 315

 (1993) (“[A] legislative choice is not subject to courtroom fact-finding and may be

 based on rational speculation unsupported by evidence or empirical data.”).

¶ 51 In this case, Plaintiffs submitted an affidavit from Brian Ceccarelli, a North

 Carolina licensed engineer, stating that “Greenville’s yellow light durations” create a

 “dilemma zone” for many drivers such that even a “driver who takes responsible steps

 to follow the law[] neither has the distance to stop comfortably nor has the time to

 traverse the distance to the intersection before the light turns red.” In his opinion,

 Greenville’s “yellow light duration is too short, thus forcing the driver [in the dilemma

 zone] to run the red light.” He further concluded that, if Greenville’s yellow light
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 durations were lengthened to account for the dilemma zone, “80%-90% fewer red light

 running violations w[ould] be recorded by the camera system. . . . In particular,

 neither [Plaintiff] would have been cited for a red-light violation.”

¶ 52 We hold that Greenville’s RLCEP did not violate Plaintiffs’ substantive due

 process rights. In seeking authority from the General Assembly to implement an

 RLCEP, Greenville resolved that “a serious public safety hazard is created by drivers

 of motor vehicles who violate the law by entering an intersection after the traffic

 signal light turns red[.]” Perhaps citations issued to those caught in the “dilemma

 zone” do not further Greenville’s interest in public safety, or perhaps they do. As long

 as the matter is rationally debatable, “it is immaterial whether this Court or an

 individual could devise a more precise or perfect fit between the espoused goal and

 the means chosen to effectuate that goal. The two need only be reasonably related[.]”

 Crown Mem’l Park, 162 N.C. App. at 321, 590 S.E.2d at 471 (citing Hunter, 261 N.C.

 at 229, 134 S.E.2d at 369).

¶ 53 We note that red light cameras, along with other forms of technology, have the

 potential to drastically alter the enforcement of our traffic laws. A red light camera

 now enables the government to monitor each and every traffic signal with exacting

 precision, twenty-four hours a day, without blinking an eye. Mr. Ceccarelli noted in

 his affidavit that Plaintiffs entered the intersection within “0.4” seconds of the light

 turning red, stating that “[s]uch a quick time is discernable only by computer-
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 triggered camera, not by human perception.” In his opinion, Plaintiffs “had no reason

 to know they were running a red light.”

¶ 54 Developments in technology will continue to present challenging problems

 with which policymakers must contend. This Court, however, does not sit to make

 policy determinations. A citizen’s best defense to what he sees as incompetent or

 corrupt policy judgments is to appeal to his fellow citizens and hold his government

 to account at the ballot box.

 D. Fines and Forfeitures Clause

¶ 55 Plaintiffs argue that the RLCEP, as applied, violates the Fines and Forfeitures

 Clause contained in Article IX, Section 7 of the State Constitution due to the funding

 scheme adopted by the interlocal agreement between Greenville and the School

 Board. Plaintiffs contend that, because the School Board receives less than the “clear

 proceeds” of the civil penalties collected by Greenville, the RLCEP violates the Fines

 and Forfeitures Clause. We agree, reverse the trial court’s order as to this claim, and

 remand for entry of summary judgment in Plaintiffs’ favor.

¶ 56 Article IX, Section 7 provides that “the clear proceeds of all penalties and

 forfeitures and of all fines collected in the several counties for any breach of the penal

 laws of the State . . . shall be faithfully appropriated and used exclusively for

 maintaining free public schools.” N.C. Const. Art. IX, § 7. “[T]he term ‘clear proceeds’

 as used in Article IX, Section 7 is synonymous with net proceeds[,] . . . and . . . the
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 costs of collection should be deducted from the gross proceeds of monies received for

 traffic violations in order to determine the net or ‘clear proceeds.’” Shavitz v. City of

 High Point, 177 N.C. App. 465, 481, 630 S.E.2d 4, 15 (2006) (quoting Cauble v. City

 of Asheville, 314 N.C. 598, 604, 336 S.E.2d 59, 63 (1985)) (alterations in original). “By

 ‘clear proceeds’ is meant the total sum less only the sheriff’s fees for collection, when

 the fine and costs are collected in full.” Cauble, 314 N.C. at 602–03, 336 S.E.2d at 62

 (quoting State v. Maultsby, 139 N.C. 583, 585, 51 S.E. 956, 956 (1905)) (alteration in

 original).

 [C]osts of collection do not include the costs associated with
 enforcing the ordinance but are limited to the
 administrative costs of collecting the funds. If . . . the costs
 of enforcing the penal laws of the State were a part of
 collection of fines imposed by the laws, there could never
 be any clear proceeds of such fines to be used for the
 support of the public schools. . . . Conversely it would be an
 impractical and harsh rule to deny municipalities the
 reasonable costs of collections.

 Id. at 606, 336 S.E.2d at 64 (alteration in original).

¶ 57 “Article IX, Section 7 ‘is not self-executing’; therefore, the General Assembly

 may ‘specify[] how the provision’s goals are to be implemented.’” Shavitz, 177 N.C.

 App. at 482, 630 S.E.2d at 16 (quoting N.C. Sch. Bds. Ass’n v. Moore, 359 N.C. 474,

 512, 614 S.E.2d 504, 527 (2005)). To that end, and not inconsistent with caselaw

 limiting deductible costs to “costs of collection,” Moore, 359 N.C. at 527, 614 S.E.2d at

 512; Cauble, 314 N.C. at 606, 336 S.E.2d at 64, the General Assembly has defined
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 “clear proceeds” as “the full amount of all penalties, forfeitures or fines collected

 under authority conferred by the State, diminished only by the actual costs of

 collection, not to exceed ten percent (10%) of the amount collected.” N.C. Gen. Stat. §

 115C-437 (2019) (emphasis added).

¶ 58 We hold that the interlocal agreement between Greenville and the School

 Board does not meet the minimum requirements of Article IX, Section 7 or N.C. Gen.

 Stat. § 115C-437. According to Greenville’s responses to interrogatories, the RLCEP

 generated $2,495,380.46 in total revenue from 2017 through June 2019. The School

 Board paid Greenville $706,986.65 in program expenses during the same period,

 which included $581,986.65 in fees invoiced by ATS. Ultimately, the School Board

 received $1,788,393.81 in net revenue during the period, which is only 71.66% of the

 total amount of fines and fees collected by Greenville. N.C. Gen. Stat. § 115C-437

 provides that, at a minimum, school boards must receive 90% of the total fines and

 fees collected.

¶ 59 Moreover, fines and fees may be “diminished only by the actual costs of

 collection,” N.C. Gen. Stat. § 115C-437, and “the costs of collection do not include the

 costs associated with enforcing the ordinance but are limited to the administrative

 costs of collecting the funds.” Cauble, 314 N.C. at 606, 336 S.E.2d at 64. Pursuant to

 the interlocal agreement, Greenville invoices the School Board for the salary and

 benefits of a law enforcement officer as well as for all fees invoiced to Greenville by
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 ATS. This Court has previously held that the salary and benefits of law enforcement

 officers are enforcement costs and are thus not deductible from the clear proceeds.

 Shavitz, 177 N.C. App. at 482, 630 S.E.2d at 16 (stating that “the costs of employing

 police and judges are not deducted to determine the clear proceeds of a penalty”).

 Also, the contract between ATS and Greenville provides that Greenville pay ATS

 $31.85 in fees for every $100.00 paid citation, in addition to other miscellaneous fees

 associated with ATS services. The contract states that “[t]his fee will cover the

 services set out in Article 2” of the contract, wherein “collections” is only one of ten

 services included in the $31.85 fee. The fee also includes “enforcement” costs, which

 may not be deducted from clear proceeds. Cauble, 314 N.C. at 606, 336 S.E.2d at 64.

 Even assuming that the entirety of the $31.85 fee was for collection costs, Greenville

 is only permitted to deduct $10 from every $100 paid citation to offset the costs of

 collection. N.C. Gen. Stat. § 115C-437.

¶ 60 Defendants argue that the interlocal agreement does not violate Article IX,

 Section 7 because Greenville initially pays the School Board 100% of the fines

 collected under the RLCEP. Because Greenville collects all of its RLCEP expenses

 from the School Board after forwarding the fines to the School Board, Defendants

 argue that the funding agreement is constitutionally adequate.

¶ 61 This argument asks us to not only frustrate the clear intent of the people in

 ratifying Article IX, Section 7, it also contravenes the plain language of the Fines and
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

 Forfeitures Clause, which provides that “the clear proceeds . . . shall belong to and

 remain in the several counties, and shall be faithfully appropriated and used

 exclusively for maintaining free and public schools.” N.C. Const. Art. IX, § 7

 (emphasis added).

¶ 62 We disagree that the School Board receives the “clear proceeds” of the fines

 collected simply because Greenville initially forwards the fines to the School Board

 and collects its expenses at a later date. The School Board does not receive the “clear”

 proceeds of fines in any real sense when Greenville forwards the fines to the School

 Board and subsequently takes 30% of the money back for costs which are not

 deductible to begin with. Moreover, the clear purpose of the people in mandating that

 the clear proceeds of such fines be “faithfully appropriated” to the public schools

 cannot be circumvented by the elaborate diversion of funds or cleverly drafted

 contracts. Id. (emphasis added).

¶ 63 Even if we were to accept Defendants’ argument that the School Board does

 receive the clear proceeds at least initially, the clear proceeds must then “be used

 exclusively for maintaining free and public schools” and thus may not be used to

 reimburse Greenville for its RLCEP expenses to ATS. Id. Moreover, by stating that

 the clear proceeds are to “remain in the several counties,” it is clear that the framers

 did not intend for $31.85 of every $100.00 paid fine to go to private companies such

 as ATS, a for-profit corporation located in Arizona. Id.
 FEARRINGTON V. CITY OF GREENVILLE

 2022-NCCOA-158

 Opinion of the Court

¶ 64 The language of Article IX, Section 7 “is unequivocal as to its drafters’ intent

 to benefit the public schools as opposed to city treasuries” or private companies.

 Shavitz, 177 N.C. App. at 484, 630 S.E.2d at 17. We hold that Plaintiffs are entitled

 to summary judgment as to their claim under the Fines and Forfeitures Clause.

 IV. Conclusion

¶ 65 For the foregoing reasons, we reverse the trial court’s dismissal of Plaintiffs’

 claim under the Fines and Forfeitures Clause and remand for entry of summary

 judgment in Plaintiffs’ favor. We otherwise affirm the trial court’s orders. We dismiss

 Plaintiffs’ assignment of error as to the expert affidavit as not preserved for appellate

 review.

 DISMISSED IN PART; AFFIRMED IN PART; REVERSED AND

 REMANDED IN PART.

 Judges DIETZ and GORE concur.