IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-158

No. COA20-877

Filed 15 March 2022

Pitt County, No. 19 CVS 1217

ERIC STEVEN FEARRINGTON, CRAIG D. MALMROSE, Plaintiffs,

v.

CITY OF GREENVILLE, PITT COUNTY BOARD OF EDUCATION, Defendants.

Appeal by Plaintiffs from orders entered 22 April 2020, 22 July 2020, and 28 July 2020 by Judge Jeffery B. Foster in Pitt County Superior Court. Heard in the Court of Appeals 8 September 2021.

*Stam Law Firm, PLLC, by R. Daniel Gibson and Paul Stam, for Plaintiffs-Appellants.*

*Hartzog Law Group LLP, by Dan Hartzog Jr., for Defendant-Appellee City of Greenville.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Robert J. King III, Jill R. Wilson, and Elizabeth L. Troutman, for Defendant-Appellee Pitt County Board of Education.*

GRIFFIN, Judge.

¶ 1 Plaintiffs Eric Steven Fearrington and Craig D. Malmrose appeal from orders denying Plaintiffs' motion for summary judgment and granting City of Greenville's and Pitt County Board of Education's motions to dismiss. Plaintiffs argue that various aspects of Greenville's Red Light Camera Enforcement Program ("RLCEP")

are illegal and unconstitutional. After review, we hold that the funding framework of the RLCEP violates the Fines and Forfeitures Clause contained in Article IX, Section 7 of our State Constitution. We therefore reverse the trial court's dismissal of Plaintiffs' claim under Article IX, Section 7 and remand for entry of summary judgment in Plaintiffs' favor. We otherwise affirm the trial court's orders.

Plaintiffs also argue that the trial court erroneously considered the affidavit of an unqualified expert. We hold that Plaintiffs failed to preserve this argument for appellate review.

## I. Factual and Procedural Background

Pursuant to sections 20-158 and 20-176 of our General Statutes, failure to stop at a traffic light when the light is red is an infraction subject to a "penalty of not more than one hundred dollars[.]" N.C. Gen. Stat. §§ 20-158(b)(2)(a), 20-176(a), (b) (2019). Notwithstanding these provisions, the General Assembly has further provided that certain "[m]unicipalities may adopt ordinances for the civil enforcement of [N.C. Gen. Stat. §] 20-158 by means of a traffic control photographic system[.]" N.C. Gen. Stat. § 160A-300.1(c) (2019). These "traffic control photographic system[s]" are more commonly known as "red light cameras." *Id.*

On 30 June 2016, the General Assembly enacted a local act authorizing Greenville to implement an RLCEP, providing in pertinent part:

> **SECTION 3.** . . . (2) A violation detected by a [red light

camera] shall be deemed a noncriminal violation for which a civil penalty of one hundred dollars ($100.00) shall be assessed, and for which no points authorized by G.S. 20-16(c) shall be assigned to the owner or driver of the vehicle nor insurance points as authorized by G.S. 58-36-65.

**SECTION 4.** The City of Greenville and the Pitt County Board of Education may enter into an interlocal agreement necessary and proper to effectuate the purpose and intent of G.S. 160A-300.1 and this act. Any agreement entered into pursuant to this section may include provisions on cost-sharing and reimbursement that the Pitt County Board of Education and the City of Greenville freely and voluntarily agree to for the purpose of effectuating the provisions of G.S. 160A-300.1 and this act.

An Act to Make Changes to the Law Governing Red Light Cameras in the City of Greenville, 2016 N.C. Sess. Laws 64, §§ 3, 4 [hereinafter "S.L. 2016-64"].

After S.L. 2016-64 was enacted, Greenville implemented an RLCEP and amended its Code of Ordinances accordingly:

Sec. 10-2-283. Offense.

(a) It shall be unlawful for a vehicle to cross the stop line at a [red light camera] location when the traffic signal for that vehicle's direction of travel is emitting a steady red light[.]

. . .

Sec. 10-2-285. Appeals. . . .

Appeals shall be heard through an administrative process established by the city. Once an appeal is requested, an appeal hearing will be scheduled. The hearing officer's

> decision is subject to review in the Superior Court of Pitt
> County by proceedings in the nature of certiorari.

Greenville, N.C., Code of Ordinances §§ 10-2-283(a), 285 (2016).

¶ 6        In March 2017, Greenville entered into a contract with American Traffic Solutions ("ATS"), a firm headquartered in Arizona, for the installation, maintenance, and management of the City's RLCEP.  Pursuant to the contract, Greenville agreed to pay ATS $31.85 in fees for every $100.00 paid citation, in addition to other miscellaneous fees associated with ATS services.  The record reflects that detailed design plans for the RLCEP were produced with ATS's logo and address appearing on each page.  Robert F. Rennebaum, a licensed North Carolina engineer, signed and affixed his seal to the design plans.

¶ 7        In November 2018, the North Carolina Board of Examiners for Engineers and Surveyors sent a letter to ATS, stating that "there [wa]s sufficient evidence to support the charges that [ATS] [wa]s practicing or offering to practice engineering and surveying in North Carolina . . . without being licensed" by the Board.  The Board also sent a letter to Mr. Rennebaum, which stated, "[F]or red light camera installation plans for . . . Greenville . . . bearing your certification, you may be in violation for affixing your seal to work not done under your direct supervisory control . . . and aiding and abetting [ATS] to evade or attempt to evade the provisions of [N.C. Gen. Stat. § 89C-16].  Allegedly, the work you certified was prepared by [ATS]."  In May

2019, the Board entered a Decision and Order finding that Mr. Rennebaum did commit the foregoing violations and ordered that he pay a $5,000.00 civil penalty and pass an "Engineering Ethics" course.

¶ 8     Greenville and Pitt County Board of Education (the "School Board") entered into an interlocal funding agreement whereby the civil penalties from the RLCEP would be collected by Greenville and forwarded to the School Board.  It was agreed that Greenville would then invoice the School Board monthly for all expenses associated with maintaining the RLCEP, and the invoices were to be paid within thirty days of receipt.  According to Greenville's responses to interrogatories, the RLCEP generated $2,495,380.46 in total revenue from 2017 through June 2019.  The School Board paid Greenville $706,986.65 in program expenses during the same period, which included $581,986.65 in fees invoiced by ATS.  The School Board received $1,788,393.81 in net revenue during the period, which is 71.66% of the total amount of fines and fees collected by Greenville.

¶ 9     On 15 May 2018, Plaintiff Fearrington was issued a citation for failing to stop at a red light camera location when the light was red.  Fearrington submitted a written request for an appeal and stated in his request that (1) the RLCEP violated "Article I, Sections 1, 19, 35 and 36 of the North Carolina Constitution"; and (2) the interlocal agreement between Greenville and the School Board violated "Article IX, Section 7 of the North Carolina [Constitution]" because less than "ninety percent of

the clear proceeds of" the civil penalties collected by Greenville went to the School

Board. An appeal hearing was held on 16 October 2018, after which a Notice of

Determination was issued finding Fearrington "liable" because he presented "no

defense[.]"

¶ 10 Following the appeal hearing, Fearrington was informed in writing that he had

"fully exhausted [his] administrative remedies with the City of Greenville concerning

[his] citation" and that, if he wished to pursue the matter further, he should file a

petition for writ of certiorari with Pitt County Superior Court. Fearrington then filed

a petition for writ of certiorari. In response, Defendants stated to him in writing that

"[t]he proper mechanism through which to present your two constitutional challenges

to the [RLCEP] is through a declaratory judgment action[.]" Pursuant to an

agreement between the parties, the trial court entered a "Consent Order for the

purpose of effectuating their agreements" and concluded the following as a matter of

law:

> 1. [Fearrington] has fully exhausted his administrative
>    remedies with the City of Greenville concerning his
>    citation.
> 2. A declaratory judgment action, rather than a Petition
>    for Review under N.C. Gen. Stat. § 160A-393, is the
>    most efficient means for [Fearrington] to present his as-
>    applied challenges to the [RLCEP].

¶ 11 Plaintiff Malmrose also appealed his citation. Malmrose stated in a sworn

deposition that he attempted to record his appeal hearing on his phone, but a

Greenville police officer stopped him from doing so. The officer confiscated Malmrose's phone and informed him that Greenville's city attorney instructed him to not allow respondents to record the hearings. Following the hearing, a Notice of Determination was issued finding Malmrose "liable" because of a "fast yellow[.]"

¶ 12 On 22 April 2019, Plaintiffs jointly filed a Complaint in Pitt County Superior Court, seeking declaratory judgments that the RLCEP violated (1) Article I, Sections 1, 19, 35 and 36 of the North Carolina Constitution, as applied; (2) N.C. Gen. Stat. § 160A-300.1; (3) Article IX, Section 7 of the North Carolina Constitution, as applied, due to the funding scheme adopted by the interlocal agreement between Greenville and the School Board; (4) Chapter 89C of the North Carolina General Statutes governing the lawful practice of engineering in North Carolina; and (5) procedural due process.

¶ 13 On 22 April 2020, the trial court granted Defendants' motions to dismiss, and denied Plaintiffs' motion for summary judgment, as to claims (2), (3), and (4). On 22 July 2020, the court granted the School Board's motion to dismiss as to claims (1) and (5), resolving all remaining claims against the School Board. With only claims (1) and (5) pending against Greenville remaining, the trial court granted summary judgment in Greenville's favor as to those claims. Plaintiffs' timely filed notice of appeal from the trial court's orders.

## II.  Jurisdiction

¶ 14    Defendants argue that (1) Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies and (2) an adequate state remedy exists to redress Plaintiffs' injury, barring Plaintiffs' constitutional claims. Defendants also argue that Plaintiffs lack standing to bring their claim under Article IX, Section 7. We address each argument in turn.

**A. Administrative Remedies**

¶ 15    Defendants argue that Plaintiffs' claims should be dismissed because Plaintiffs failed to exhaust administrative remedies. Because Plaintiffs did not have their administrative appeals heard via petitions for certiorari in Pitt County Superior Court, Defendants reason that Plaintiffs were barred from filing the instant action. We disagree.

¶ 16    "As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). "If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed." *Phillips v. Orange Cty. Health Dep't*, 237 N.C. App. 249, 257, 765 S.E.2d 811, 817 (2014) (citation omitted).

¶ 17    With respect to red light camera citations, N.C. Gen. Stat. § 160A-300.1(c)(4) provides that "[t]he municipality shall institute a nonjudicial administrative hearing

to review objections to citations or penalties issued or assessed under this section." The local ordinance governing Greenville's RLCEP provides,

> Appeals shall be heard through an administrative process established by the city. Once an appeal is requested, an appeal hearing will be scheduled. The hearing officer's decision is subject to review in the Superior Court of Pitt County by proceedings in the nature of certiorari.

Greenville, N.C., Code of Ordinances §§ 10-2-285. Review of the hearing officer's decision in superior court is the final step in the appeal process established by Greenville.

In this case, Fearrington filed a petition for writ of certiorari in Pitt County Superior Court seeking review of the constitutional claims he presented during the administrative hearing. Defendants then stated to him in writing that "[t]he proper mechanism through which to present your two constitutional challenges to the [RLCEP] is through a declaratory judgment action[.]" Pursuant to an agreement by the parties, the trial court entered a Consent Order disposing of Fearrington's petition for writ of certiorari and concluded as a matter of law that Fearrington had "fully exhausted his administrative remedies with the City of Greenville concerning his citation."

We conclude that Fearrington exhausted his administrative remedies once the trial court entered the Consent Order disposing of his petition for writ of certiorari. The Consent Order constitutes a final order entered in the last stage of the

administrative appeal process. Once the order was entered, Fearrington had no other administrative remedy available to him and was free to file the instant action in the trial court.

¶ 20 Defendants argue that, regardless of the trial court's conclusion that administrative remedies were exhausted, Plaintiffs' appeal should be dismissed because (1) the trial court's conclusion was incorrect and (2) the Consent Order was entered to give effect to the parties' agreements, which is insufficient to establish subject matter jurisdiction.

¶ 21 It is true that "parties to an action may not stipulate to give a court subject matter jurisdiction[] where no such jurisdiction exists. Thus, the parties could not simply stipulate that they had exhausted all administrative remedies in order for the trial court to have jurisdiction over the matter." *Bio-Medical Apps. of N.C., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 179 N.C. App. 483, 492, 634 S.E.2d 572, 579 (2006). In this case, however, a final order was entered which disposed of the final appeal in the administrative process. The Consent Order thus amounted to more than a mere stipulation by the parties. Once the parties' agreement was reduced to a written order, "[i]t acquire[d] the status of a judgment, *with all its incidents*, through the approval of the judge and its recordation in the records of the court." *McRary v. McRary*, 228 N.C. 714, 719, 47 S.E.2d 27, 31 (1948) (emphasis added). "The fact that a judgment is rendered by consent gives it neither less nor greater force and

effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties." *Id.* at 720, 47 S.E.2d at 31.

¶ 22     Moreover, our inquiry with respect to the exhaustion requirement is not whether the legal conclusions contained in the final order are correct or incorrect. Once a tribunal with proper jurisdiction enters a final order disposing of the last stage in the administrative process, as here, all administrative remedies are exhausted. *See Hentz v. Asheville City Bd. of Educ.*, 189 N.C. App. 520, 523, 658 S.E.2d 520, 522 (2008) ("Because the [Board of Education] had not yet issued a final decision at the time [the] plaintiff filed her action in superior court, [the] plaintiff had not exhausted all administrative remedies."). Whether the trial court correctly concluded that Fearrington had exhausted his administrative remedies is therefore irrelevant.

**B. Adequate State Remedy**

¶ 23     Defendants also argue that Plaintiffs' constitutional claims are barred because an adequate state remedy exists to redress Plaintiffs' injury. *See Corum v. Univ. of N.C. Bd. of Governors*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992) ("Having no other remedy, our common law guarantees [the] plaintiff a direct action under the State Constitution for alleged violations of his constitutional . . . rights." (citation omitted)). We have already concluded that Fearrington exhausted all remedies available to him. There is also no adequate statutory or common law remedy which

would redress Plaintiffs' asserted injuries under the State Constitution. *See Alt v. Parker*, 112 N.C. App. 307, 318, 435 S.E.2d 773, 779 (1993) (dismissing the plaintiff's appeal due to the existence of adequate state remedies because the plaintiff failed to exhaust administrative remedies and had a "common law tort action for false imprisonment available to him"). We therefore conclude that an adequate state remedy does not exist to bar Plaintiffs' constitutional claims.

**C. Article IX, Section 7 Standing**

Finally, Defendants argue that Plaintiffs lack standing to challenge the funding scheme adopted by the interlocal agreement between Greenville and the School Board. Because "Plaintiffs do not have a sufficient stake in any alleged controversy arising under the Interlocal Agreement" and "have not suffered some 'injury in fact' from any breach thereof," Defendants contend that Plaintiffs' claim under Article IX, Section 7 must be dismissed. We disagree.

First, our Supreme Court has made plain that the "injury-in-fact requirement has no place in the text or history of our [S]tate Constitution" and is "inconsistent with the caselaw of this Court." *Comm. to Elect Dan Forest v. Emps. Political Action Comm.*, 376 N.C. 558, 2021-NCSC-6, ¶¶73–74. "Rather, as a rule of prudential self-restraint . . . we have required a plaintiff to allege 'direct injury' to invoke the judicial power to pass on the constitutionality of a legislative or executive act." *Id.* ¶ 73. On the other hand, "[w]hen a person alleges the infringement of a legal right arising

under a cause of action at common law, a statute, or the North Carolina Constitution, . . . the legal injury itself gives rise to standing." *Id.* ¶ 82. This is because the "remedy clause [of our State Constitution] should be understood as guaranteeing standing to sue in our courts where a legal right at common law, by statute, or arising under the North Carolina Constitution has been infringed." *Id.* ¶ 81 (emphasis in original) (citing N.C. Const. Art. I, § 18, cl. 2). Because Plaintiffs are not challenging the constitutionality of a statute or an "executive act," they need not demonstrate an injury-in-fact in order to establish standing. *Id.* ¶¶ 73, 81.

¶ 26 Even so, we cannot say that Plaintiffs have failed to demonstrate any injury resulting from the funding agreement between Greenville and the School Board. Plaintiffs were both issued citations at red light camera locations and each were found liable for a $100.00 fine. If Plaintiffs are correct in arguing that the proceeds of the fines are unconstitutionally appropriated pursuant to Article IX, Section 7, they have demonstrated an injury to their rights under the State Constitution. Our appellate courts have previously addressed the merits of at least one case strikingly similar to the case at bar. *See Cauble v. City of Asheville*, 301 N.C. 340, 271 S.E.2d 258 (1980).

¶ 27 In *Cauble*, the plaintiff "alleged that he and the citizens, residents and taxpayers of the City of Asheville had paid fines for overtime parking which . . . , pursuant to Article IX, [S]ection 7 of the North Carolina Constitution, belonged to the

county to be 'used exclusively for maintaining free public schools.'" *Id.* at 341, 271 S.E.2d at 259. At no point did this Court or our Supreme Court doubt whether it had subject-matter jurisdiction to hear the plaintiff's appeal. *Id.* at 342, 271 S.E.2d at 259. Similar to *Cauble*, Plaintiffs allege that they each paid fines for red light camera violations which, under Article IX, Section 7, belong to the School Board. We discern no notable difference between *Cauble* and the instant case with respect to jurisdiction.

¶ 28     Moreover, there is "no serious question that a taxpayer ha[s] an equitable right to sue to prevent an illegal disposition of the moneys of [a] county." *Goldston v. State*, 361 N.C. 26, 31, 637 S.E.2d 876, 880 (2006) (citations and internal quotation marks omitted). "[I]f such rights were denied to exist against municipal corporations, then taxpayers and property owners who bear the burdens of government would not only be without remedy, but liable to be plundered whenever irresponsible men might get into the control of the government of towns and cities." *Id.* (citation omitted). Plaintiffs alleged in their Complaint that they are residents and taxpayers of Pitt County.

¶ 29     We conclude that Plaintiffs' appeal is properly before this Court and proceed to address the merits of their arguments.

### III.    Analysis

¶ 30        Plaintiffs argue that the trial court erred in denying their motion for summary judgment because Greenville's RLCEP violates (1) Chapter 89C of the North Carolina General Statutes; (2) procedural due process; (3) substantive due process; and (4) the Fines and Forfeitures Clause contained in Article IX, Section 7 of the North Carolina Constitution.  We hold that Plaintiffs are entitled to summary judgment as to their claim under the Fines and Forfeitures Clause.  We otherwise affirm the trial court's orders.

¶ 31        Plaintiffs also argue that the trial court erred in considering the affidavit of an unqualified expert.  Although Plaintiffs motioned to strike the affidavit from the court's consideration, our review of the record indicates that Plaintiffs never obtained a ruling on that motion.  *See* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . [and] obtain a ruling upon the party's request, objection, or motion."); *Finley Forest Condo. Ass'n v. Perry*, 163 N.C. App. 735, 738, 594 S.E.2d 227, 230 (2004) ("This Court is unable to review the issue concerning the trial court's admission and consideration of the affidavits since there is nothing before this Court indicating the trial court's ruling on the question.").  We are thus unable to review this issue.

**A.  Chapter 89C**

¶ 32　　　　Plaintiffs contend that Chapter 89C of the General Statutes "imposes a duty on municipalities to enforce its provisions" and that "Defendants violated this duty by using red light camera plans drawn by unlicensed engineers" with ATS. Because Chapter 89C does not contemplate or provide a private cause of action for violations of its provisions, we hold that Plaintiffs' claim was appropriately dismissed by the trial court.

¶ 33　　　　"[A] statute may authorize a private right of action either explicitly or impliedly, though typically, 'a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute[.]'" *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 338, 828 S.E.2d 467, 474 (2019) (citations omitted). "Where a cause of action is created by statute and the statute also provides who is to bring the action, the person or persons so designated, and, ordinarily, only such persons, may sue." *State ex rel. Lanier v. Vines*, 274 N.C. 486, 492, 164 S.E.2d 161, 164 (1968) (citation omitted).

¶ 34　　　　N.C. Gen. Stat. § 89C-23 provides in pertinent part:

> Any person who shall practice, or offer to practice, engineering or land surveying in this State without first being licensed in accordance with the provisions of this Chapter . . . , in addition to injunctive procedures set out hereinbefore, shall be guilty of a Class 2 misdemeanor. . . . It shall be the duty . . . of the State and all political subdivisions of the State to enforce the provisions of this Chapter and to prosecute any persons violating them.

N.C. Gen. Stat. § 89C-23 (2019). Section 89C-23 thus provides two enforcement mechanisms for violations of its provisions: (1) "injunctive procedures" and (2) criminal prosecution. *Id.* With respect to the former, N.C. Gen. Stat. § 89C-10(c) provides, "The Board [of Examiners for Engineers and Surveyors] may in the name of the State apply for relief, by injunction, . . . to enforce the provisions of this Chapter, or to restrain any violation of the provisions of this Chapter." N.C. Gen. Stat. § 89C-10(c) (2019).

¶ 35          Here, Chapter 89C does not provide Plaintiffs with a private cause of action. It instead vests authority in the Board to seek an injunction in the name of the State for violation of the Chapter's provisions. *Id.* Although section 89C-23 requires "all political subdivisions of the State to enforce the provisions of th[e] Chapter and to prosecute any persons violating them[,]" it does not provide Plaintiffs with a private right of action against Defendants. *Id.* § 89C-23.

¶ 36          The fact that Plaintiffs seek a declaratory judgment as opposed to an injunction does not change our analysis. For example, in *Sykes*, the plaintiffs sought a declaratory judgment that the defendants "fail[ed] to comply with various provisions of the [S]tate's Insurance Law found in Chapter 58 of the North Carolina General Statutes." *Sykes*, 372 N.C. at 337, 828 S.E.2d at 474. The plaintiffs argued that the "Declaratory Judgment Act g[a]ve[] them a path to declaratory relief, notwithstanding Chapter 58's language vesting enforcement authority in the

Commissioner of Insurance." *Id.* at 339, 828 S.E.2d at 475. The Court rejected this argument, holding that "the language of [Chapter 58], as well as the previous cases interpreting other portions of Chapter 58, vest enforcement of the requirements of the statutory sections identified by plaintiffs in the Commissioner of Insurance, meaning that plaintiffs do not have a private right of action for declaratory relief under these provisions." *Id.*

¶ 37 As in *Sykes*, Plaintiffs seek a declaration that Defendants violated certain statutory provisions, but those provisions do not provide Plaintiffs with a private right of action. Instead, the authority to enforce Chapter 89C lies with the Board of Examiners for Engineers and Surveyors and "political subdivisions of the State." N.C. Gen. Stat. §§ 89C-10, 23. Plaintiffs point to no portions of Chapter 89C that, either expressly or impliedly, confer a right of action on private claimants. We affirm the trial court's dismissal of Plaintiffs' claim under Chapter 89C.

**B. Procedural Due Process**

¶ 38 Plaintiffs next argue that the RLCEP's administrative appeal hearings violate procedural due process because the hearing officers "disregard[] evidence and deny[] the right to record hearings." We disagree.

¶ 39 "The fundamental premise of procedural due process protection is notice and the opportunity to be heard . . . 'at a meaningful time and in a meaningful manner.'" *Peace v. Emp. Sec. Comm'n of N.C.*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998)

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "At a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them, and the particulars of notice and hearing must be tailored to the capacities and circumstances of those who are to be heard." *State v. Stines*, 200 N.C. App. 193, 198, 683 S.E.2d 411, 414 (2009) (citation omitted). Under the 14th Amendment of the federal constitution, the degree of process due in a particular proceeding turns on three factors: (1) "the private interests at stake," (2) "the government's interest," and (3) "the risk that the procedures used will lead to erroneous decisions." *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 27 (1981) (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Greenville is required by statute to "institute a nonjudicial administrative hearing to review objections to [red light camera] citations[.]" N.C. Gen. Stat. § 160A-300.1(c)(4). To that end, the local ordinance governing Greenville's RLCEP provides that appeals from citations "shall be heard through an administrative process established by the city." Greenville, N.C., Code of Ordinances §§ 10-2-285. If the appellant receives an unfavorable decision following his administrative appeal, the RLCEP provides that the "hearing officer's decision is subject to review in the Superior Court of Pitt County by proceedings in the nature of certiorari." *Id.*

Once a petition for certiorari is filed and granted, the superior court reviews the administrative decision pursuant to the following standard of review:

(1) . . . [T]he court shall ensure that the rights of petitioners have not been prejudiced because the decision-making body's findings, inferences, conclusions, or decisions were:

a. In violation of constitutional provisions, including those protecting procedural due process rights.

b. In excess of the statutory authority conferred upon the local government, including preemption, or the authority conferred upon the decision-making board by ordinance.

c. Inconsistent with applicable procedures specified by statute or ordinance.

d. Affected by other error of law.

e. Unsupported by competent, material, and substantial evidence in view of the entire record.

f. Arbitrary or capricious.

(2) When the issue before the court is one set forth in sub-subdivisions a. through d. of subdivision (1) of this subsection, including whether the decision-making board erred in interpreting an ordinance, the court shall review that issue de novo. . . . Whether the record contains competent, material, and substantial evidence is a conclusion of law, reviewable de novo.

N.C. Gen. Stat. § 160D-1402(j)(1-2) (2020).[1]

---

[1] Prior to 19 June 2020, appeals from municipal administrative decisions subject to superior court review were governed by N.C. Gen. Stat. § 160A-393 (2019). The General Assembly subsequently amended the provisions therein and recodified them under a new Chapter: 160D. The standard of review governing the instant appeal remains unchanged. Moreover, N.C. Gen. Stat. § 160D-111, titled "Effect on prior laws," provides, "The enactment of [160D] does not require the readoption of any local government ordinance enacted pursuant to laws

¶ 42       We conclude that the hearing process established by Greenville is constitutionally adequate. First, there is little "risk that the procedures used will lead to erroneous decisions." *Lassiter*, 452 U.S. at 27 (1981). Given that running a red light is a strict liability offense, N.C. Gen. Stat. §§ 20-158(2)(a), 20-176(a), (b) (2019), it follows that determining whether a cited individual is liable for a violation involves a rather limited inquiry. For example, Greenville's ordinances provide only two affirmative defenses to a red light camera violation:

> (c) . . . [T]he owner of the vehicle shall not be responsible for the violation if . . . he furnishes the officials or agents of the city either of the following:
>
> > (1) An affidavit by him stating the name and address of the person or entity who had the care, custody, and control of the vehicle at the time of the violation; or
> >
> > (2) An affidavit by him stating that, at the time of the violation, the vehicle involved was stolen. The affidavit must be supported with evidence that supports the affidavit, including insurance or police report information.
>
> (d) . . . [T]he owner of the vehicle shall not be responsible for the violation if notice of the violation is given to the

that were in effect before June 19, 2020 and are restated or revised herein. The provisions of this Chapter do not affect any act heretofore done, any liability incurred, any right accrued or vested, or any suit or prosecution begun or cause of action accrued as of June 19, 2020." N.C. Gen. Stat. § 160D-111(a) (2020). Plaintiffs received their citations and commenced the instant suit prior to these amendments.

> owner of the vehicle more than ninety (90) days after the
> date of the violation.

Greenville, N.C., Code of Ordinances § 10-2-283(c-d).

¶ 43 Neither Plaintiff presented evidence establishing an affirmative defense. Although Malmrose was prevented from recording his hearing, the affirmative defenses under the ordinance require submission of affidavits or proof that notice of the violation was received more than ninety days after the violation. In light of this limited inquiry, it is unlikely that recordings or transcripts of the proceedings would mitigate the risk of erroneous decisions.

¶ 44 We also reject Plaintiffs' argument that the hearing officers "disregard[ed] evidence" during Fearrington's hearing. During his hearing, Fearrington argued and submitted evidence that the RLCEP, as applied, violated substantive due process as well as Article IX, Section 7 of the State Constitution. A Notice of Determination was subsequently issued finding Fearrington "liable" because he had "no defense[.]" Fearrington indeed did not present evidence establishing an affirmative defense. Moreover, municipal hearing officers do not have jurisdiction to decide constitutional issues. *See Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1998) (stating that "it is the province of the judiciary to make constitutional determinations").

¶ 45 Although "constitutional claims will not be acted upon by administrative tribunals, such claims can be reserved for the" judiciary by statute, as here. *Johnston v. Gaston Cty.*, 71 N.C. App. 707, 713, 323 S.E.2d 381, 384 (1984). "This division of review, saving constitutional issues for the courts, does not unduly hinder or restrict [an appellant] in asserting his rights." *Id.* On appeal to superior court, the trial judge has jurisdiction to determine whether the hearing officers' decisions are "[i]n violation of constitutional provisions, including those protecting procedural due process rights." N.C. Gen. Stat. § 160D-1402(j)(1)(a). The superior court decides constitutional questions *de novo* and, if necessary, has the authority to "allow the record to be supplemented with affidavits, testimony of witnesses, or documentary or other evidence[.]" *Id.* § 160D-1402(j)(1), (i). We conclude that these procedures adequately protected Plaintiffs' procedural due process rights.

## C. Substantive Due Process

¶ 46 Plaintiffs also argue that Greenville's RLCEP, as applied, violates substantive due process under the State Constitution because it "infringes Plaintiffs' fundamental right to travel and has no rational relation to a legitimate governmental purpose." This argument is without merit.

¶ 47 In general, substantive due process bars government action that unreasonably or arbitrarily deprives individuals of a liberty or property interest. *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 181, 594 S.E.2d 1, 15 (2004). "When reviewing an alleged

violation of substantive due process rights, a court's first duty is to carefully describe the liberty interest the complainant seeks to have protected." *Standley v. Woodfin*, 362 N.C. 328, 331, 661 S.E.2d 728, 730 (2008). If the liberty interest is "fundamental," our standard of review is strict scrutiny. *Rhyne*, 358 N.C. at 180, 594 S.E.2d at 15. Otherwise, we apply the rational basis test, which only requires that the government action "in question [be] rationally related to a legitimate government purpose." *Standley*, 362 N.C. at 332, 661 S.E.2d at 731.

¶ 48 Plaintiffs argue that the RLCEP infringes on "the fundamental right to travel[.]" "[T]he right to travel on public streets is a fundamental segment of liberty" such that "the absolute prohibition of such travel requires substantially more justification *than the regulation of it by traffic lights or rules of the road.*" *State v. Dobbins*, 277 N.C. 484, 499, 178 S.E.2d 449, 457-58 (1971) (emphasis added). "The familiar traffic light is . . . an ever present reminder that this segment of liberty is not absolute. It may be regulated, as to the time and manner of its exercise, when reasonably deemed necessary to the public safety, *by laws reasonably adapted to the attainment of that objective.*" *Id.* at 456, 178 S.E.2d at 497 (emphasis added).

¶ 49 Our precedent clearly demonstrates that laws relating to "traffic lights and rules of the road" are different in kind than other laws regulating travel. *Id.* at 499, 178 S.E.2d at 457-58. So long as such laws are "reasonably adapted to the attainment of" the government's interest in "public safety," they will not be disturbed upon review

by the courts. *Id.* at 456, 178 S.E.2d at 497. We therefore review Plaintiffs' substantive due process claim under the rational basis test.

¶ 50 "When determining whether a rational basis exists for application of a law, we must determine whether the law in question is rationally related to a legitimate government purpose." *Standley*, 362 N.C. at 332, 661 S.E.2d at 731 (citations omitted). In making this determination, "it is immaterial whether this Court or an individual could devise a more precise or perfect fit between the espoused goal and the means chosen to effectuate that goal. The two need only be reasonably related[.]" *N.C. Bd. of Mortuary Sci. v. Crown Mem'l Park, LLC*, 162 N.C. App. 316, 321, 590 S.E.2d 467, 471 (2004) (citing *Clark's Charlotte, Inc. v. Hunter*, 261 N.C. 222, 229, 134 S.E.2d 364, 369 (1964)); *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.").

¶ 51 In this case, Plaintiffs submitted an affidavit from Brian Ceccarelli, a North Carolina licensed engineer, stating that "Greenville's yellow light durations" create a "dilemma zone" for many drivers such that even a "driver who takes responsible steps to follow the law[] neither has the distance to stop comfortably nor has the time to traverse the distance to the intersection before the light turns red." In his opinion, Greenville's "yellow light duration is too short, thus forcing the driver [in the dilemma zone] to run the red light." He further concluded that, if Greenville's yellow light

durations were lengthened to account for the dilemma zone, "80%-90% fewer red light running violations w[ould] be recorded by the camera system. . . . In particular, neither [Plaintiff] would have been cited for a red-light violation."

¶ 52        We hold that Greenville's RLCEP did not violate Plaintiffs' substantive due process rights. In seeking authority from the General Assembly to implement an RLCEP, Greenville resolved that "a serious public safety hazard is created by drivers of motor vehicles who violate the law by entering an intersection after the traffic signal light turns red[.]" Perhaps citations issued to those caught in the "dilemma zone" do not further Greenville's interest in public safety, or perhaps they do. As long as the matter is rationally debatable, "it is immaterial whether this Court or an individual could devise a more precise or perfect fit between the espoused goal and the means chosen to effectuate that goal. The two need only be reasonably related[.]" *Crown Mem'l Park*, 162 N.C. App. at 321, 590 S.E.2d at 471 (citing *Hunter*, 261 N.C. at 229, 134 S.E.2d at 369).

¶ 53        We note that red light cameras, along with other forms of technology, have the potential to drastically alter the enforcement of our traffic laws. A red light camera now enables the government to monitor each and every traffic signal with exacting precision, twenty-four hours a day, without blinking an eye. Mr. Ceccarelli noted in his affidavit that Plaintiffs entered the intersection within "0.4" seconds of the light turning red, stating that "[s]uch a quick time is discernable only by computer-

triggered camera, not by human perception." In his opinion, Plaintiffs "had no reason to know they were running a red light."

¶ 54        Developments in technology will continue to present challenging problems with which policymakers must contend. This Court, however, does not sit to make policy determinations. A citizen's best defense to what he sees as incompetent or corrupt policy judgments is to appeal to his fellow citizens and hold his government to account at the ballot box.

**D. Fines and Forfeitures Clause**

¶ 55        Plaintiffs argue that the RLCEP, as applied, violates the Fines and Forfeitures Clause contained in Article IX, Section 7 of the State Constitution due to the funding scheme adopted by the interlocal agreement between Greenville and the School Board. Plaintiffs contend that, because the School Board receives less than the "clear proceeds" of the civil penalties collected by Greenville, the RLCEP violates the Fines and Forfeitures Clause. We agree, reverse the trial court's order as to this claim, and remand for entry of summary judgment in Plaintiffs' favor.

¶ 56        Article IX, Section 7 provides that "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State . . . shall be faithfully appropriated and used exclusively for maintaining free public schools." N.C. Const. Art. IX, § 7. "[T]he term 'clear proceeds' as used in Article IX, Section 7 is synonymous with net proceeds[,] . . . and . . . the

costs of collection should be deducted from the gross proceeds of monies received for traffic violations in order to determine the net or 'clear proceeds.'" *Shavitz v. City of High Point*, 177 N.C. App. 465, 481, 630 S.E.2d 4, 15 (2006) (quoting *Cauble v. City of Asheville*, 314 N.C. 598, 604, 336 S.E.2d 59, 63 (1985)) (alterations in original). "By 'clear proceeds' is meant the total sum *less only the sheriff's fees for collection*, when the fine and costs are collected in full." *Cauble*, 314 N.C. at 602–03, 336 S.E.2d at 62 (quoting *State v. Maultsby*, 139 N.C. 583, 585, 51 S.E. 956, 956 (1905)) (alteration in original).

> [C]osts of collection do not include the costs associated with enforcing the ordinance but are limited to the administrative costs of collecting the funds. If . . . the costs of enforcing the penal laws of the State were a part of collection of fines imposed by the laws, there could never be any *clear proceeds* of such fines to be used for the support of the public schools. . . . Conversely it would be an impractical and harsh rule to deny municipalities the reasonable costs of collections.

*Id.* at 606, 336 S.E.2d at 64 (alteration in original).

¶ 57        "Article IX, Section 7 'is not self-executing'; therefore, the General Assembly may 'specify[] how the provision's goals are to be implemented.'" *Shavitz*, 177 N.C. App. at 482, 630 S.E.2d at 16 (quoting *N.C. Sch. Bds. Ass'n v. Moore*, 359 N.C. 474, 512, 614 S.E.2d 504, 527 (2005)). To that end, and not inconsistent with caselaw limiting deductible costs to "costs of collection," *Moore*, 359 N.C. at 527, 614 S.E.2d at 512; *Cauble*, 314 N.C. at 606, 336 S.E.2d at 64, the General Assembly has defined

"clear proceeds" as "the full amount of all penalties, forfeitures or fines collected under authority conferred by the State, *diminished only by the actual costs of collection, not to exceed ten percent (10%) of the amount collected.*" N.C. Gen. Stat. § 115C-437 (2019) (emphasis added).

¶ 58     We hold that the interlocal agreement between Greenville and the School Board does not meet the minimum requirements of Article IX, Section 7 or N.C. Gen. Stat. § 115C-437. According to Greenville's responses to interrogatories, the RLCEP generated $2,495,380.46 in total revenue from 2017 through June 2019. The School Board paid Greenville $706,986.65 in program expenses during the same period, which included $581,986.65 in fees invoiced by ATS. Ultimately, the School Board received $1,788,393.81 in net revenue during the period, which is only 71.66% of the total amount of fines and fees collected by Greenville. N.C. Gen. Stat. § 115C-437 provides that, at a minimum, school boards must receive 90% of the total fines and fees collected.

¶ 59     Moreover, fines and fees may be "diminished only by the actual costs of collection," N.C. Gen. Stat. § 115C-437, and "the costs of collection do not include the costs associated with enforcing the ordinance but are limited to the administrative costs of collecting the funds." *Cauble*, 314 N.C. at 606, 336 S.E.2d at 64. Pursuant to the interlocal agreement, Greenville invoices the School Board for the salary and benefits of a law enforcement officer as well as for all fees invoiced to Greenville by

ATS. This Court has previously held that the salary and benefits of law enforcement officers are enforcement costs and are thus not deductible from the clear proceeds. *Shavitz*, 177 N.C. App. at 482, 630 S.E.2d at 16 (stating that "the costs of employing police and judges are not deducted to determine the clear proceeds of a penalty"). Also, the contract between ATS and Greenville provides that Greenville pay ATS $31.85 in fees for every $100.00 paid citation, in addition to other miscellaneous fees associated with ATS services. The contract states that "[t]his fee will cover the services set out in Article 2" of the contract, wherein "collections" is only one of ten services included in the $31.85 fee. The fee also includes "enforcement" costs, which may not be deducted from clear proceeds. *Cauble*, 314 N.C. at 606, 336 S.E.2d at 64. Even assuming that the entirety of the $31.85 fee was for collection costs, Greenville is only permitted to deduct $10 from every $100 paid citation to offset the costs of collection. N.C. Gen. Stat. § 115C-437.

¶ 60 Defendants argue that the interlocal agreement does not violate Article IX, Section 7 because Greenville initially pays the School Board 100% of the fines collected under the RLCEP. Because Greenville collects all of its RLCEP expenses from the School Board *after* forwarding the fines to the School Board, Defendants argue that the funding agreement is constitutionally adequate.

¶ 61 This argument asks us to not only frustrate the clear intent of the people in ratifying Article IX, Section 7, it also contravenes the plain language of the Fines and

Forfeitures Clause, which provides that "the clear proceeds . . . *shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free and public schools.*" N.C. Const. Art. IX, § 7 (emphasis added).

¶ 62 We disagree that the School Board receives the "clear proceeds" of the fines collected simply because Greenville initially forwards the fines to the School Board and collects its expenses at a later date. The School Board does not receive the "clear" proceeds of fines in any real sense when Greenville forwards the fines to the School Board and subsequently takes 30% of the money back for costs which are not deductible to begin with. Moreover, the clear purpose of the people in mandating that the clear proceeds of such fines be "*faithfully* appropriated" to the public schools cannot be circumvented by the elaborate diversion of funds or cleverly drafted contracts. *Id.* (emphasis added).

¶ 63 Even if we were to accept Defendants' argument that the School Board does receive the clear proceeds at least initially, the clear proceeds must then "be used exclusively for maintaining free and public schools" and thus may not be used to reimburse Greenville for its RLCEP expenses to ATS. *Id.* Moreover, by stating that the clear proceeds are to "remain in the several counties," it is clear that the framers did not intend for $31.85 of every $100.00 paid fine to go to private companies such as ATS, a for-profit corporation located in Arizona. *Id.*

The language of Article IX, Section 7 "is unequivocal as to its drafters' intent to benefit the public schools as opposed to city treasuries" or private companies. *Shavitz*, 177 N.C. App. at 484, 630 S.E.2d at 17. We hold that Plaintiffs are entitled to summary judgment as to their claim under the Fines and Forfeitures Clause.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's dismissal of Plaintiffs' claim under the Fines and Forfeitures Clause and remand for entry of summary judgment in Plaintiffs' favor. We otherwise affirm the trial court's orders. We dismiss Plaintiffs' assignment of error as to the expert affidavit as not preserved for appellate review.

DISMISSED IN PART; AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges DIETZ and GORE concur.